UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ABM Industry Groups, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Service Employees International Union,<br>Local 26,<br><br>    Defendant. | Court File No. _____<br><br><br><br>**COMPLAINT** |

## INTRODUCTION

1. Plaintiff ABM Industry Groups, LLC ("ABM") brings this action to vacate an arbitration award issued on July 9, 2018, involving the above-captioned parties.

2. The arbitration involved a grievance filed by Service Employees International Union, Local 26 (the "Union") dated June 28, 2017 alleging that ABM violated the parties' collective bargaining agreement (the "Agreement").

3. In its grievance, the Union alleged that ABM violated the Agreement by: (1) failing to "implement" the Minneapolis and St. Paul Sick and Safe Time ("SST") ordinances and (2) forcing employees to use vacation and floating holiday "for . . . purposes other than intended use."

4. On July 9, 2018, Arbitrator James A. Lundberg issued an Opinion and Award ("the Award") denying Union's grievance in part and sustaining it in part.

5. By finding that ABM violated the Agreement by failing to "implement" the Minneapolis and St. Paul SST ordinances and directing ABM to accrue SST, the

Arbitrator exceeded his authority under the express terms of the Agreement, he ignored the plain language of the Agreement to enforce his own notion of industrial justice, and his Award does not draw its essence from the Agreement.

## JURISDICTION

6.    This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 151 *et seq.*, Section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185, Section 10 of the Federal Arbitration Act ("FAA"), codified at 9 U.S.C. § 10, and 28 U.S.C. § 1331.

7.    Venue is proper in the United States District Court for the District of Minnesota under 29 U.S.C. § 185, 9 U.S.C. § 10, and 28 U.S.C. § 1391.

## PARTIES

8.    ABM generally provides janitorial and other building maintenance services to commercial and industrial clients.

9.    ABM is a Delaware limited liability company, with its principal place of business located in Sugar Land, Texas. ABM is a wholly-owned subsidiary of ABM Industries Inc.

10.    ABM is an employer engaged in commerce in the District of Minnesota within the meaning of the National Labor Relations Act ("NLRA").

11.    The Union is the exclusive bargaining representative for a group of ABM's employees and the Union is a "labor organization" within the meaning of the LMRA.

12.    The Union's offices are located at 826 18th Avenue N.E., Minneapolis, MN 55418.

## STATUTORY FRAMEWORK

13. Labor relations between employers and labor organizations, including ABM and the Union, are governed by the NLRA, 29 U.S.C. § 151 *et seq.*, as amended by the LMRA, 29 U.S.C. § 171 *et seq.*

14. Section 301 of the LMRA, 29 U.S.C. § 185, authorizes lawsuits against labor organizations "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ."

15. Section 10 of the FAA, 9 U.S.C. § 10, authorizes vacation of arbitrator awards "where the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

## FACTUAL BACKGROUND

### The Collective-Bargaining Relationship

16. ABM participates in a convenience bargaining group called the Minneapolis-St. Paul Contract Cleaners Association (the "MSPCCA"). Through MSPCCA, ABM and the Union have a long-established bargaining history dating back more than ten years.

17. The current Agreement is effective March 14, 2016 through December 31, 2019, and it covers employees performing janitorial work in the seven county Minneapolis-St. Paul metropolitan area. A copy of the Agreement is attached as Exhibit 1.

### Relevant Contractual Provisions

18. Section 20.9(c) provides in relevant part:

3

> Employers will grant sick days mandated by ordinance or statute within the jurisdiction/application of such ordinance or statute. If the ordinance or statute provides for CBA exception, sick days will be granted per the ordinance or statute on the first of the following year.

19. Section 21.2 provides in relevant part:

> Should any of the provisions of this Contract . . . be held either administratively or judicially to be in violation of any applicable Federal, State or Local legislation, the Union and the Employer agree to meet to bargain any necessary changes or adjustments in this Agreement, . . . so that compliance with such legislation shall be achieved. It is agreed, however, that such adjustments shall result in no (or minimum) overall financial cost to the Employer. It is provided, however, that such changes and/or readjustments must be lawful.

20. Article 23 of the Agreement establishes a grievance procedure for the resolution of disputes regarding the interpretation or application of any provision of the Agreement.

21. Section 23.6 provides that for binding arbitration if the grievance is not resolved through the procedures set forth in Section 23.2.

22. Section 23.2(b) provides that a written grievance "must include the name(s) of the aggrieved employee(s) or the aggrieved employee class representatives if any employee(s) are seeking a remedy via the grievance."

23. Section 23.9 provides in relevant part that "[t]he arbitrator shall have the authority to apply the provisions of this Agreement and to render a decision of any grievance properly coming before him/her, but he/she shall not have the authority to amend or modify this Agreement or to establish any terms or conditions of this Agreement . . . ."

4

2888162.v4

## The Dispute, Grievance, Arbitration, and Award

24. The parties' most-recent predecessor Agreement was effective from April 1, 2013 to December 31, 2015 (the "2013-2015 Agreement").

25. The parties negotiated the current Agreement from approximately November 2015 to March 2016.

26. In June 2015, the Metropolitan Airports Commission ("MAC") issued a directive requiring "covered employers" performing work at the Minneapolis-St. Paul Airport ("MSP Airport") to provide their employees with one hour of "paid leave" for every 30 hours worked ("MAC Paid Leave Policy").

27. While ABM had employees who performed work at the airport at the airport, the MAC Paid Leave Policy exempted employers, like ABM, that were subject to a collective bargaining agreement until a successor agreement was negotiated.

28. During the negotiations, the Union made several proposals relating to "Sick Days" as defined by Section 20.9 of the Agreement, including the following: "If a government entity, including but not limited to the Metropolitan Airports Commission, establishes a policy better than this, the employee in the covered area shall receive the better benefit." ABM, through MSPCCA, rejected each of the Union's proposals.

29. ABM, through MSPCCA, made clear to the Union during negotiation that it would not agree to any proposal that would or could increase ABM's sick day obligations, as a union-signatory contractor compared to a non-signatory (or non-union) contractor, under any sick day ordinance or statute.

30. The Union agreed that any agreement between the Union and the MSPCCA to comply with sick day ordinances or statutes would not foist additional obligations on MSPCCA contractors, like ABM, as compared to non-signatory contractors.

31. The Union desired language in Section 20.9 that would accomplish the following: (1) prevent any law or ordinance from "exempting" employers that were subject to a collective bargaining agreement and (2) prevent a union contractor from arguing that the state or local law was preempted by the Agreement.

32. In consideration of the Union's concerns and with the mutual understanding that MSPCCA would not agree to any proposals that increased union-signatory contractors' obligations relative to non-signatory (or non-union) contractors, the parties agreed to add the following language to Section 20.9: "Employers will grant sick days mandated by ordinance or statute within the jurisdiction/application of such ordinance or statute. If the ordinance or statute provides for CBA exception, sick days will be granted per the ordinance or statute on the first of the following year."

33. Following ratification of the Agreement, ABM contacted the MAC in order to understand whether its employees working at the MSP Airport would be covered by the MAC Paid Leave Policy. Representatives from MAC confirmed that only four of ABM's 21 cleaning contracts at MSP Airport were covered by the policy.

34. Pursuant to Section 21.2, ABM met with the Union on June 17, 2016 regarding the MAC Paid Leave Policy and the fact that it did not apply to all ABM employees working at the MSP Airport.

35. Pursuant to Section 21.2 and Section 20.9, ABM notified the Union on June 21, 2016 that it would provide additional leave as required by the MAC Paid Leave Policy only to the employees performing work on the four MSP Airport contracts covered by the Policy, but not to employees performing work on the 17 MSP Airport contracts not covered by the Policy.

36. The Union did not file a grievance or otherwise argue that ABM should apply the MAC Paid Leave Policy to all employees working at the MSP Airport.

37. On May 31, 2016, the City of Minneapolis passed the Minneapolis Sick and Safe Time Ordinance (the "Minneapolis SST Ordinance"). On September 7, 2016, the City of St. Paul passed the St. Paul Earned Sick and Safe Time Ordinance (the "St. Paul ESST Ordinance"). Both ordinances were effective July 1, 2017.

38. Prior to July 1, 2017, a Hennepin County District Court Judge enjoined the City of Minneapolis from enforcing its ordinance against "nonresident" employers. The City of Minneapolis defined "resident" as "an employer with a physical location (real property, rented or owned) in the city."

39. The City of St. Paul interpreted its ordinance to similarly require "residency" by showing ownership of real or rented property in the City of St. Paul.

40. ABM does not own or rent any property in Minneapolis or St. Paul.

41. Because some members of MSPCCA own or rent property in Minneapolis or St. Paul, and pursuant to Section 21.2, the parties met to discuss the effects of the Minneapolis and St. Paul ordinances in June 2017.

42. In a grievance dated June 28, 2017, the Union alleged that ABM violated the Agreement by: (1) failing to "implement" the Minneapolis and St. Paul sick leave ordinances and (2) forcing employees to use vacation and floating holiday "for . . . purposes other than intended use."

43. The parties were unable to resolve the matter using the Agreement's grievance procedures and subsequently submitted the matter to arbitration.

44. The parties selected James A. Lundberg (the "Arbitrator") as a neutral arbitrator to resolve the dispute.

45. The arbitration hearing was held on April 17, 2018, in Minneapolis, Minnesota.

46. The parties submitted their post-hearing briefs to the Arbitrator on June 5, 2018.

47. On July 9, 2018, the Arbitrator issued the Award in which he denied the Union's grievance in part and sustained it in part. A copy of the Arbitrator's Decision and Award is attached as Exhibit 2.

48. The Award fails to "draw its essence" from the parties' Agreement because: (1) the Award is based exclusively upon the Arbitrator's interpretation of the Minneapolis and St. Paul sick leave ordinances and not the parties' Agreement; (2) the Arbitrator failed to consider the parties' intent by ignoring or disregarding critical provisions of the Agreement and the parties' bargaining history; and (3) the Arbitrator failed to confine his decision to interpretation and application of the Agreement.

49. The Arbitrator exceeded his authority under the Agreement by "modifying" the Agreement and imposing a new obligation upon ABM; namely, requiring that ABM "accrue Safe and Sick time beginning July 1, 2017 in accordance with the provisions of the ordinance."

50. The Arbitrator exceeded his authority under the Agreement by ignoring or disregarding unambiguous language in Section 21.2 requiring the parties to negotiate "any necessary changes or adjustments" to comply with legislation and requiring that "such adjustments shall result in no (or minimum) overall financial cost to the Employer."

51. The Arbitrator exceeded his authority under the Agreement by ignoring the plain meaning of Section 23.2(b) requiring that a written grievance "must include the name(s) of the aggrieved employee(s) or the aggrieved employee class representatives if any employee(s) are seeking a remedy via the grievance."

52. The Award cannot be rationally derived from the terms of the Agreement because, rather than construing the parties' Agreement, the Arbitrator adopted his own reading of the ordinances, which is contrary to the cities' own construction of the ordinances' jurisdiction/application.

53. The Award is contrary to law because it purports to enforce the Minneapolis and St. Paul ordinances against non-resident employers like ABM.

54. The Award ignores express and unambiguous contract language.

55. The Arbitrator substituted his own notion of industrial justice for the parties' negotiated agreement.

## COUNT I
## VACATE ARBITRATION AWARD

56. ABM re-states and re-alleges all of the allegations in the preceding paragraphs as if fully incorporated herein.

57. In rendering his decision, the Arbitrator exceeded the authority granted to him under the terms of the collective bargaining agreement.

58. In rendering his decision, the Arbitrator ignored the plain language of the collective bargaining agreement to enforce his own notion of industrial justice.

59. The Award does not draw its essence from the collective bargaining agreement. Rather, in rendering his decision, the Arbitrator dispensed his own notion of industrial justice.

WHEREFORE, ABM respectfully requests that this Court issue an order:

1. Vacating and setting aside the Arbitrator's Award dated July 9, 2018 as exceeding the scope of the Arbitrator's authority, ignoring the plain language of the collective bargaining agreement, and/or failing to draw its essence from the parties' Agreement;

2. Enter an order upholding the clear and unambiguous terms of the collective bargaining agreement and denying the Grievance in its entirety; and

3. Awarding such costs, fees, and other remedies as this Court deems appropriate.

Dated:  October 4, 2018.  FELHABER LARSON

By: /s/ Grant T. Collins
    Grant T. Collins, #0390654

220 South Sixth Street, Suite 2200
Minneapolis, MN  55402-4504
Telephone:  (612) 339-6321
Facsimile:  (612) 338-0535
gcollins@felhaber.com

ATTORNEYS FOR PLAINTIFF