UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ABM Industry Groups, LLC,

    Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civ. No. 18-2846 (MJD/TNL)

Service Employees International Union,
Local 26,

    Defendant.

---

Grant T. Collins, Felhaber Larson, Counsel for Plaintiff.

Justin D. Cummins, Cummins & Cummins, LLP, Counsel for Defendant.

---

This matter is before the Court on Plaintiff's Motion to Vacate an Arbitration Award [Doc. No. 2] and Defendant's Motion for Judgment on the Pleadings. [Doc. No. 14]

**I.    Background**

Plaintiff ABM Industry Groups, LLC ("ABM") is a janitorial services company that is headquartered in Golden Valley, Minnesota. ABM employs approximately 1,300 janitors under a Collective Bargaining Agreement ("CBA") with Defendant Service Employees International Union Local 26 (the "Union").

1

The current CBA covers the period March 14, 2016 through December 31, 2019. (Collins Decl., Ex. 1.) ABM participates in a convenience bargaining group called the Minneapolis-St. Paul Contract Cleaners Association ("MSPCCA"). (Id.)

In the parties' predecessor CBA, sick days were available for full-time employees only, depending on length of service. (Id., Ex. 4 at 14.) One paid sick day was provided to employees with at least one year of service, two paid sick days for those with at least three years of service and three paid sick days for employees with five years of service. (Id.)

During negotiations for the current CBA, the parties discussed changes to the sick leave policies. ABM asserts that at that time, the only law requiring paid sick leave in Minnesota was the sick leave policy enacted by the Metropolitan Airports Commission ("MAC"). (Id., Ex. 6.) During the time of negotiations, the cities of Minneapolis and St. Paul were considering ordinances concerning sick leave. Eventually Minneapolis passed its Sick and Safe Time ordinance in May 2016 and St. Paul passed its Earned Sick and Safe Time ordinance in September 2016.

ABM argues the theme of the overall negotiations was to maintain or close the gap between union cleaning contractors and non-union contractors such that if non-union employers were required to do something then the Employer would agree to do so as well. (Id., Ex. 3 at 13.) Otherwise, union cleaning contractors would become less competitive and would potentially lose cleaning contracts to non-union contractors. (Id.)

The Union made specific proposals regarding sick leave policy, focusing on ensuring that employees in the covered area of a sick leave statute or ordinance would receive the better benefits. (Id. Ex. 5 at 1, 4-5.) ABM rejected these proposals. (Id. Ex. 3 at 18-19.) After further talks, the parties agreed to the following changes regarding sick leave:

a) Full time employees with one (1) year or more of service shall be eligible to use one (1) paid sick day each year. Full time employees with three (3) years or more of service shall be eligible to use two (2) paid sick days each year. Full time employees with five (5) years or more of service shall be eligible to use three (3) paid sick days each year. Effective 1/1/18, Full time employees with five (5) years or more of service shall be eligible to use four (4) paid sick days each year.
b) Part-time employees with three (3) years or more of service shall be eligible to use one (1) paid sick day each year. Part-time employees with five (5) years or more of service shall be eligible to use two (2) paid sick days each year.
c) Effective January 1, 2017 sick days shall be awarded on January 1st of each year based on the employee's seniority on such date. Sick days are non-accumulative.

3

> Employers will grant sick days mandated by ordinance or statute within the jurisdiction/application of such ordinance or statute. If the ordinance or statute provides for CBA exception, sick days will be granted per the ordinance or statute on the first of the following year.

(Id., Exs. 1 (Article 20.9) and 4.)

ABM asserts that the parties anticipated legislative changes that may cause a need to make adjustments to the CBA, and therefore agreed to the following provision to address the process by which changes would be made.

> Readjustments to Comply with Legislation: Should any of the provisions of this Contract . . . be held either administratively or judicially to be in violation of any applicable Federal, State or Local legislation, the Union and the Employer agree to meet to bargain any necessary changes or adjustments in this Agreement, including, but not limited to classifications and/or wage rates, so that compliance with such legislation shall be achieved. It is agreed, however, that such adjustments shall result in no (or minimum) overall financial cost to the Employer. It is provided, however, that such changes and/or readjustments must be lawful.

(Id. Ex. 1, Section 21.1 at 18.)

When the current CBA became effective, the parties needed to assess and implement the changes required by the MAC in its sick leave policies, which required covered employers to provide 1 hour of sick leave for every 30 hours worked, up to 72 hours per year. ABM reached out to the MAC seeking clarification as to the application of the MAC's sick leave policy to ABM's operations at MSP. (Id., Ex. 7 at 5 (email from Dan Kampmeyer to Greg Failor

4

dated April 28, 2016).) The MAC responded to ABM's inquiry, stating that the MAC policy applies only to ABM employees that are providing janitorial/cleaning services for the airlines. (Id., Ex. 7 at 1-3.) Thus, out of 21 ABM employees working at the airport, only those employees performing work on four contracts were covered by the MAC policy. (Id. at 1-2.) ABM communicated this information to the Union. (Id. Ex. 8.) The Union did not file a grievance challenging the MAC's construction of its policy or otherwise argue that it should be applied to all cleaning contracts at the airport. (Id. Ex. 3 at 21.)

The new Minneapolis and St. Paul sick leave ordinances were scheduled to go into effect on July 1, 2017. Both ordinances required that for covered employees working for a covered employer, one hour of earned sick leave and safe time must accrue for every 30 hours worked. Both ordinances also provide that employers are permitted to make other paid leave, such as vacation time, available for use as earned sick leave to comply with the ordinances. Jurisdiction and application of the sick leave ordinances, however, differ between the cities.

St. Paul's ordinance applies to any person who performed work within the geographic boundaries of the city for at least eighty (80) hours in a year. STP

5

Ordinance § 233.02. The City also enacted Rules for the enforcement of its Sick Leave Policy, which clarify that the Policy applies only to those employers that "ha[ve] a physical location within Saint Paul. " STP Admin. Rules § 233.02, https://www.stpaul.gov/sites/default/files/Media%20Root/Human%20Rights%20%26%20Equal%20Economic%20Opportunity/ESST%20Rules%20Update.9.29.2017.pdf.

The Minneapolis ordinance applies to "any individual employed by an employer . . . who performs[s] work within the geographic boundaries of the City for at least eighty (80) hours in a year." MCO § 40.40. The ordinance defined "employer" as a person or entity that employees one (1) or more employees." Id. Although the Minneapolis ordinance did not have language limiting its application to employers that have a physical location within the City, a state court issued an order preliminarily enjoining the City from enforcing its ordinance against any employer resident outside the geographic boundaries of the City. See Minn. Chamber of Commerce v. Minneapolis, 27-cv-16-15051 at 20 (Minn. D. Ct. Jan. 19, 2017) aff'd 2017 WL 4105201 (Minn. Ct. App. Sep. 18, 2017) rev. denied, (Nov. 28, 2017).

In June 2017, the parties to the CBA met in accordance with Article 21.2 to bargain over the effects of the Minneapolis and St. Paul sick leave ordinances. The parties exchanged proposals but were not able to reach agreement. (Collins

Decl. Exs. 12 and 13.) Because ABM believed it was not currently within the jurisdiction and application of either city's ordinance, it did not implement terms to comply with either. ABM made clear to the Union, however, that it would "meet to bargain necessary changes to comply with the Minneapolis ordinance." (Id. Ex. 13 at 2.)

The Union filed a grievance on June 28, 2017 which alleged that ABM violated the CBA by failing to implement Municipal Sick and Safe Time Ordinance on July 1, 2017 and forcing employee's use of vacation and Floating Holidays for purposes other than its intended use. (Id. Ex. 14.) The grievance alleged violations of Articles 10, 11 and 20 of the CBA. As a remedy, the Union requested that all employees working within corporate city limits of Minneapolis and St. Paul receive 80 hours sick time on January 1st of each year, beginning in 2018. (Id.)

An arbitration hearing took place on April 17, 2018 on the Union's grievance. (Id. Ex. 2.) The parties submitted post hearing briefs on June 5, 2018.

On July 9, 2018, the Arbitrator issued his Award in which he denied the Union's grievance in part and sustained it in part. (Collins Decl., Ex. 2.) The Arbitrator found that ABM did not violate the CBA by requiring employees to

use holiday or vacation time for sick leave, but that it did violate the CBA by failing to apply the sick leave ordinances implemented by the City of St. Paul and the City of Minneapolis pursuant to Article 20.9 of the CBA. (Id. at 21-22.)

To determine whether ABM was subject to the Minneapolis Sick Leave Ordinance, the Arbitrator discussed the Minnesota state court decision and its analysis of the extraterritorial impact on companies located outside of Minneapolis whose employees materially benefit from the Minneapolis Ordinance. (Id. at 17.) The Arbitrator also considered dictionary definitions of "resident" in his analysis as to whether ABM was subject to the Minneapolis Ordinance. (Id. at 18.) Ultimately, the Arbitrator found that:

> [ABM] is bound or obliged by contract to provide janitorial services for specific buildings located within the city of Minneapolis. [ABM] is, in other words, a resident serving properties geographically located within the City of Minneapolis.

(Id.)

The Arbitrator further found that "[t]he resident status of the Company within both Minneapolis and St. Paul is supported by contractual obligation and physical evidence. The Employer has by contract a substantial business presence in both Minneapolis and St. Paul." (Id.) He then described the nature of the janitorial contracts, the location of the buildings serviced, and that employees

8

work significant periods of time in buildings physically located within the city limits. The Arbitrator then found that ABM is resident in many locations within the respective city, and as a result, was subject to both the Minneapolis and St. Paul Sick Leave Ordinances, and was directed to "comply with the Minneapolis and St. Paul Safe and Sick Time Ordinances consistent with Article 20, Section 20.9 as of July 1, 2017. Employees who have met the requirements of the Saint Paul Safe and Sick Time Ordinance shall accrue Safe and Sick time beginning July 1, 2017 in accordance with the provisions of the ordinance." (Id. at 22.)

After the award was issued, the City of Minneapolis amended its sick leave ordinance to address the state court's concerns about its geographic reach. Minnesota Chamber of Commerce v. City of Minneapolis, __ N.W.2d __, 2019 WL 1890301 at *2 (Minn. Ct. App. Apr. 29, 2019). The ordinance was amended to apply only to hours an employee worked within the geographic boundaries of the City, and that the sick and safe leave could only be used when the employee is scheduled to perform work within the geographic boundaries of the City. Id. Despite the amendment to the ordinance, the district court found the ordinance impermissibly operated outside the geographic borders of the City, and permanently enjoined enforcement of the sick leave ordinance against

nonresident employers. Id. On appeal, the Minnesota Court of Appeals reversed, concluding that the ordinance did not violate the extraterritorial doctrine. Id., at *6-8.

## II. Motion to Vacate Arbitration Award

### A. Standard of Review

> [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

United Paperworks Int'l Union, AFL-CIO v. Misco, Inc, 484 U.S. 29, 38 (1987). "[The Arbitrator] may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597, 80 S. Ct. 1358, 1361 (1960). As a result, courts must accord and extraordinary level of deference to the arbitrator's award. PSC Custom, LP v. United Steel, Paper and

Forestry, Rubber, Mfg. Energy, Allied Indus. And Service Workers Intern. Union, 763 F.3d 1005, 1008 (8th Cir. 2014).

**B.     Whether Grievance was Procedurally Defective**

ABM argues that vacatur is appropriate because the Arbitrator ignored or disregarded the plain language of the CBA that set forth the requirements of a grievance. The grievance was filed on June 28, 2017, yet the ordinances did not take effect until July 1, 2017. ABM argues that Article 23 does not create a procedure for future or anticipated contract violations. In addition, ABM asserts that the grievance did not provide enough information for it to fully investigate and respond as the grievance does not name any aggrieved employees as required under Article 23.2(b):

> A written grievance filed under this section must include sufficient information that the Company may investigate and respond to the grievance. The grievance must include the name(s) of the aggrieved employee(s) or the aggrieved employee class representatives if any employee(s) are seeking a remedy via the grievance.

The record demonstrates that the Arbitrator, relying on the language of Article 23.1, found that a grievance "shall be any difference of opinion, controversy or dispute arising between the parties hereto relating to any matter of compensation, hours and working conditions of the interpretation or

application of any of the provision of this Agreement." (Id. Ex. 2 at 9-10.) The Arbitrator noted the parties had a difference of opinion as to whether the Minneapolis and/or St. Paul Sick and Safe Time ordinances have application under Article 20.9 of the CBA, and "[w]hile the grievance was filed before either ordinance went into effect, the presentation of the grievance in writing was made within 10 days of the effective date, and that the Union had provided ABM an illustrative list of affect bargaining unit employees." (Id. at 10.) In addition, the Arbitrator that the Union had provided ABM with an illustrative list of affected bargaining unit employees, and that the grievance bears the name and title of Union official Belinda Mendez, and that a lead union representative may be the representative for the class action grievance. (Id.) "While the Employer argued that it had insufficient information to investigate and respond to the grievance, the substance of the dispute centers on two municipal ordinances, the collective bargaining agreement and Company Policy all of which were ably researched and argued in the Employer's thorough and vigorous response to the grievance." (Id.)

As set forth above, an arbitration award will be confirmed if it draws its essence from the CBA and the record demonstrates that the Arbitrator arguably

construed the CBA, even if the Court were convinced the Arbitrator made an error. United Paperworks Int'l Union, 484 U.S. at 38. The record is clear that the Arbitrator applied Article 23 of the CBA to decide the procedural arguments against the Union's grievance. (Collins Decl., Ex. 2 at 9-10.) The Arbitrator found the Union timely filed its grievance in relation to when the Ordinances incorporated by the CBA went into effect; the grievance included sufficient information to allow ABM to investigate and respond, as demonstrated by ABM's lengthy written response to the grievance shortly after receiving it; and the Union provided an illustrative list of the class members harmed by the class-wide grievance. Accordingly, the Court finds that in deciding the procedural defect argument, the Arbitrator construed the relevant article of the CBA, and the award need not be vacated on this ground.

    **C.**    **Whether the Award Draws its Essence From the CBA**

Pursuant to Article 20.9(c), ABM agreed to grant "sick days mandated by ordinance or statute within the jurisdiction/application of such ordinance." Based on such language, ABM argues that the Arbitrator should have analyzed the following key terms: sick day, jurisdiction and application. Further, ABM argues the Arbitrator should have reviewed other contract provisions, such as

Article 21.2 ("Readjustments to Comply with Legislation"). (Id. Ex. 1 at 18.) Instead, the Arbitrator focused on the meaning of the ordinances and the state court decision concerning the geographic scope of the Minneapolis ordinance. He did not conduct any textual analysis of the CBA.

In addition, ABM argues the Arbitrator ignored evidence of the parties' intent. ABM introduced bargaining history and past practice evidence to show Article 20.9 was not designed to impose additional obligations on the employer. Rather, it was designed to make clear that ABM will comply with sick time ordinances exactly as a non-signatory employer was required to do. John Nesse testified as to the description of specific communications to the Union in support, and Nesse and Kampmeyer testified as to ABM's "level playing field" bargaining theme from the 2015-16 contract negotiations, the sick time proposals exchanged by the parties and specific discussions as to interests and concerns related to the sick time ordinances and statutes. ABM asserts this testimony was unrebutted and ignored by the Arbitrator.

With respect to past practice, ABM claims it introduced evidence to show the parties previously relied on jurisdictional authority to define the scope of its ordinance rather than the arbitrator. Nesse and Kampmeyer offered unrebutted

testimony as to the application of Article 20.9 to the sick leave ordinance established by the MAC. (Id., Ex. 3.) When ABM informed the Union that it would provide the MAC ordinance benefits only to its employees working at operations within the jurisdiction and application of the MAC ordinance, while other ABM employees working at other MSP airport operations would not receive such benefits, the Union did not grieve ABM's application of the MAC ordinance. ABM argues the Arbitrator completely ignored such evidence.

Pursuant to the applicable standard of review, the Arbitration Award will be confirmed where the Arbitrator arguably construed the CBA in reaching his decision on the parties' dispute as to whether Article 20.9 requires ABM to provide covered employees with sick time in accordance with the Minneapolis and St. Paul sick time ordinances, and whether the award draws its essence from the CBA. Based on the record herein, the Court finds that the Arbitrator appropriately construed Article 20.9, and that his decision on this issue draws its essence from the CBA. (Id. Ex. 2 at 6-7, 15-21.)

The Arbitrator had the authority and the obligation to interpret the Minneapolis and St. Paul Sick Leave Ordinances when deciding the merits of the grievance. The controlling provision, Article 20.9(c), explicitly incorporates the

Ordinances: "Employers will grant sick days mandated by ordinance or statute within the jurisdiction/application of such ordinance or statute." To determine whether ABM violated this provision required the Arbitrator to look to the ordinances to determine the scope of jurisdiction and application of each ordinance.

Vacatur is not warranted simply because the Arbitrator looked to external law to construe the relevant provision of a CBA. See United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960) ("[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.").

In a recent decision, the Eighth Circuit reversed a district court's decision to vacate an arbitration award. CenterPoint Energy Resources Corp. v. Gas Workers Union, Local No. 340, __ F.3d __, 2019 WL 1547951 (D. Minn. Feb. 14, 2019). The employer had challenged the award, arguing the arbitrator disregarded the contract language and instead relied on extrinsic evidence of "basic notions of fairness and due process firmly established in the history of

industrial relations." Id. at *3. The Eighth Circuit noted that the arbitrator actually found those notions were implicit in the applicable contract provision, "[s]o it is not clear that the arbitrator acted on his own notions of industrial justice rather than an effort to construe the contract." Id. "Right or wrong, this is an interpretation of the contract." Id.

ABM's argument that the Arbitrator ignored its evidence concerning the parties' intent and past practices is not supported by the record. The Award specifically included ABM's position on the merits of the dispute, including its position that union employees will be treated as non-union employees with respect to the sick leave ordinances. (Collins Decl. Ex. 2 at 14.) Regardless, the issue is whether the Arbitrator arguably construed the CBA in reaching his decision. Here, the Court finds the Arbitrator did construe the relevant provisions of the CBA and that his award draws its essence from the CBA by directing ABM to provide paid sick leave pursuant to Article 20.9(c), which incorporates the Minneapolis and St. Paul Sick Leave Ordinances. The fact that the Arbitrator did not specifically discuss ABM's arguments concerning past practices and intent is not a basis upon which to vacate.

**D. Whether the Award Exceeds Arbitrator's Authority Because It Imposes New Terms and Conditions of Employment in Violation of Section 23.9 and Nullifies 21.2.**

Article 23.9 provides:

> The arbitrator shall have the authority to apply the provisions of this Agreement and to render a decision of any grievance properly coming before him/her, but he/she shall not have the authority to amend or modify this Agreement or to establish any terms or conditions of this Agreement . . . The arbitrator shall have the authority to decide questions of statutory rights that are incorporated in this Agreement.

(Id. Ex. 1 at 20.)

Article 21.2 is directed to readjustments to comply with legislation and provides:

> Should any of the provisions of this Contract, including, but not limited to the classification system provided in Article 7, be held either administratively or judicially to be in violation of any applicable Federal, State or Local legislation, the Union and the Employer agree to meet to bargain any necessary changes or adjustment in this Agreement, including, but not limited to classifications and/or wage rates, so that compliance with such legislation shall be achieved.  It is agreed, however, that such adjustments shall result in no (or minimum) overall financial cost to the Employer.  It is provided, however, that such changes and/or readjustments must be lawful.

ABM argues that by ordering ABM to create a new benefit for employees - namely the Safe and Sick time for all employees working in St. Paul and Minneapolis, the Arbitrator exceeded his authority.

The Court finds that this argument has no merit. The Arbitrator interpreted Article 20.9 as incorporating both the Minneapolis and St. Paul Sick Leave Ordinances and pursuant to that interpretation, found that ABM was obligated to grant sick days as mandated by those Ordinances. Accordingly, the Arbitrator did not impose a new term or condition of employment that nullified Article 21.2.

IT IS HEREBY ORDERED that Plaintiff's Motion to Vacate an Arbitration Award [Doc. No. 2] DENIED and Defendant's Motion for Judgment on the Pleadings [Doc. No. 14] is GRANTED.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: June 27, 2019

                                                  s/ Michael J. Davis
                                                  Michael J. Davis
                                                  United States District Court